**Donald D. GOLDBERG, M.D.,**
**Plaintiff-Appellant,**

v.

**MALLINCKRODT, INC.,**
**Defendant-Appellee.**

**No. 448, Docket 85–7682.**

United States Court of Appeals,
Second Circuit.

Argued Dec. 5, 1985.

Decided June 9, 1986.

Charles L. Bach, Jr., New York City (Stewart A. Cunningham, Law Graduate, Heidell, Pittoni, Murphy & Bach, P.C., New York City, of counsel), for plaintiff-appellant.

Lawrence V. Senn, Jr., New York City (Karen M. Cullen, Patricia Hayashi, Mudge Rose Guthrie Alexander & Ferdon, New York City, of counsel), for defendant-appellee.

Before LUMBARD, CARDAMONE and WINTER, Circuit Judges.

WINTER, Circuit Judge:

Dr. Donald Goldberg appeals from a grant of summary judgment in favor of Mallinckrodt, Inc., the manufacturer of an allegedly unsafe medical dye. Dr. Goldberg's complaint alleged that defendant had fraudulently misrepresented the safety of its product with the result that two of his patients were injured when he administered the dye. He claimed damages for his emotional distress and for his loss of income as a result of spending time defending malpractice actions. The district court granted summary judgment with respect to both claims. We affirm.

## BACKGROUND

The facts as alleged are as follows: In October, 1976, Dr. Goldberg, an orthopedic surgeon, attended a physicians' conference at which he learned for the first time about "Dimeray," a new product manufactured by defendant Mallinckrodt. Dimeray is a dye injected into a patient's spinal cord during a procedure known as a myelogram. The dye acts as a "contrast medium" that makes the spinal cord more visible, apparently during an X-ray. Defendant touted Dimeray as an improvement on the dye then in general use, as it provided clearer myelograms and would pass naturally out of a patient's system. The ability to pass naturally out of the body was significant, for the dye then in general use had to be withdrawn from the body by needle after it was used. Defendant represented that more than three thousand tests indicated that Dimeray had no adverse side effects involving serious neurological damage. This representation allegedly was false and known to be so when made.

Impressed by the claims made about Dimeray at the conference, Dr. Goldberg used the product on a patient, who shortly thereafter suffered severe pain, paralysis, and other symptoms of nerve damage. Relying on the prior assurances of defendant as to Dimeray's safety, the doctor did not associate this adverse reaction with the product. One month later he administered the product to another patient, who also developed severe pain, lower body paralysis, and other symptoms of nerve damage. Both reactions are typical of a condition known as "cauda equina syndrome," allegedly represented by defendant not to be a side effect of Dimeray. The doctor notified Mallinckrodt of the adverse reactions. Shortly thereafter, Mallinckrodt voluntarily withdrew Dimeray from the market based on reports it had received of similar adverse reactions associated with use of the product.

Both of the injured patients brought lawsuits. In one, the patient sued Dr. Goldberg, who impleaded Mallinckrodt as a third-party defendant. In the other, the patient sued Mallinckrodt, who impleaded Goldberg.

Dr. Goldberg brought this diversity action in July, 1982. His first complaint did not allege a cause of action for fraud and was dismissed. An amended complaint alleged that Mallinckrodt had fraudulently misrepresented the safety of its product by failing to disclose knowledge of adverse reactions to Dimeray. Plaintiff claimed damages for (i) emotional distress, (ii) harm to reputation, (iii) impairment of earning capacity, (iv) out of pocket costs incurred defending the malpractice suits, and (v) the income lost as a result of time spent preparing a defense of the malpractice claims. During discovery, the damage claims were narrowed to economic loss caused by time spent away from his medical practice in defending the malpractice actions and for economic loss caused by plaintiff's inability to perform myelograms. This latter inability allegedly stemmed from Dr. Goldberg's emotional distress over the adverse reactions suffered by his patients.

Both sides moved for summary judgment. On June 21, 1985, the district court granted partial summary judgment for defendant, dismissing Dr. Goldberg's claim for "damages based on or arising out of mental and emotional distress." Subsequently, the court also dismissed the claim for lost income for time spent defending the malpractice suits. It concluded that under New York law damages for fraud must be shown to be a direct result of the fraudulent misrepresentation and that the lost income was too remote from the fraud alleged. Because damage is an essential element of a valid fraud claim, the court dismissed the action. We affirm.

## DISCUSSION

The sole issue on this appeal is whether the damages claimed are compensable in a fraud action.

### 1. The Claim for Lost Income Resulting From the Time Spent Defending Lawsuits

Under New York law, damages for fraud must be the direct, immediate, and proximate result of the fraudulent misrepresentation. *See Bennett v. United States Trust Co. of New York,* 770 F.2d 308, 316 (2d Cir.1985); *Idrees v. American University of the Caribbean,* 546 F.Supp. 1342, 1350 (S.D.N.Y.1982); *Deyo v. Hudson,* 225 N.Y. 602, 122 N.E. 635 (1919); *Mills Studio, Inc. v. Chenango Valley Realty Corp.,* 15 A.D.2d 138, 141, 221 N.Y. S.2d 684, 687 (3d Dept.1961). Dr. Goldberg's argument that the time spent away from his practice was a direct result of defendant's alleged fraud goes as follows. The misrepresentations about Dimeray induced him to purchase and use the product, thereby making plaintiff the "unwitting instrumentality by which defendant's fraud was extended to the public." Brief of Appellant at 14. As a consequence of Dr. Goldberg's use of the product, two patients were injured, and they predictably brought lawsuits. Equally foreseeable, so the argument goes, was that Dr. Goldberg would be required to devote time to the defense of that litigation, taking him away from his medical practice and thereby causing him economic loss.

We cannot agree that income lost during defense of the malpractice lawsuits is the direct and proximate result of the alleged misrepresentation.

In *Idrees,* plaintiff sought to recover damages based on fraudulent misrepresentations made by a Caribbean medical school regarding its educational program and facilities. After finding fraud, the court held that plaintiff was entitled to recover his tuition and fees paid, as well as his round-trip airfare to the school. 546 F.Supp. at 1350. However, the court denied a claim for damages based on plaintiff's inability to resume the job he had left upon enrolling in the medical school, concluding that this damage was not the direct result of the medical school's fraudulent conduct. *Id.*

Plaintiff's reliance on *Kennedy v. McKesson Co.*, 58 N.Y.2d 500, 448 N.E.2d 1332, 462 N.Y.S.2d 421 (1983), is misplaced. In *Kennedy*, a dentist sued alleging that defendant had negligently repaired an anesthetic machine. As a result, plaintiff erroneously administered nitrous oxide to a patient, which caused the patient's death. A wrongful death action was brought against the dentist. The New York Court of Appeals held that plaintiff could recover for harm to his professional reputation, but not for alleged emotional damage. The court stated, "[T]here is no duty to protect from emotional injury a bystander to whom there is otherwise owed no duty, and, even as to a participant to whom a duty is owed, such injury is compensable only when a direct, rather than a consequential, result of the breach." *Id.*, 58 N.Y.2d at 506, 448 N.E.2d at 1335, 462 N.Y.S.2d at 424. No claim for time spent away from practice defending the wrongful death action was made.

Finally, in *Williams v. Goldberg*, 58 Misc. 210, 109 N.Y.S. 15 (Sup.Ct.1908), a tenant sued a real estate agent for fraudulently stating that the ceiling in the tenant's apartment had been tested and found to be secure. In fact, no such test had been performed, and the ceiling collapsed, injuring the tenant. The court held that the plaintiff could recover for her injuries, since the damages were proximate to the fraud and were "a natural and probable effect of the agent's wrongful conduct." *Id.*, 58 Misc. at 212, 109 N.Y.S. at 17. The court treated this as a very close case, however, because the injuries had not been the immediate result of the deceit, the ceiling collapse being an intervening cause. *Id.*

Our review of these cases leads us to conclude that the damages claimed in the instant case are far more remote than have previously been allowed under New York law. Award of such damages would require us to undertake impermissible innovations in state law. *See Cornellier v. American Casualty Co.*, 389 F.2d 641, 644–45 (2d Cir.1968). The clearest and most direct result of the alleged fraud was Dr. Goldberg's purchase of the Dimeray product. The next step, which follows closely, was his use of the product and resultant injury to two patients. The initiation of lawsuits against Dr. Goldberg and his having to spend time defending them, however, were not a direct result of the fraud. Dr. Goldberg alleges that he was a totally innocent participant who had been assured by Mallinckrodt that Dimeray had no side effects when Mallinckrodt knew otherwise. If so, the likelihood of his being sued by the patients is less than he would have us believe. Indeed, his involvement in one of the two lawsuits in question came only after Mallinckrodt impleaded him. More importantly, the likelihood of his having to spend any measurable time defending such suits is negligible, in light of his clear innocence and Mallinckrodt's flagrant misconduct. The time lost would be limited to his giving testimony, which would also be necessary if the lawsuit were brought solely against Mallinckrodt. We therefore believe the lost income is too indirect a result of the fraud to be recoverable under New York law.

Dr. Goldberg advances two other theories to support his damage claim. First, he argues that there is an alternative, broader standard under New York law that allows recovery for any damage that is a "consequence" of the fraud, as opposed to the direct and proximate result thereof. This argument is based on language in the *Williams* decision that damage must be a " 'legitimate consequence of the fraud,' " 58 Misc. at 212, 109 N.Y.S. at 16 (quoting *N.Y. Land Imp. Co. v. Chapman*, 118 N.Y. 288, 294, 23 N.E. 187, 189 (1890)), and that the damages allowed were "consequential to the fraud." *Id.*, 58 Misc. at 212, 109 N.Y.S. at 17. We do not believe that this language signals the creation of a new standard, however, for the decision also speaks of "proximate" damages and of the "natural and probable" effects of the fraud— phrases smacking of the traditional direct injury rule. Furthermore, the facts of the case, described *supra*, clearly reveal that

the damages claimed were far more direct than those claimed in the instant case.

Finally, plaintiff argues that his lost time is recoverable under a rule that allows a person who becomes involved in litigation because of the wrongful act of a third party to recover against that third party for attorney's fees and other expenses suffered. *See Central Trust Co., Rochester v. Goldman,* 70 A.D.2d 767, 417 N.Y.S.2d 359 (4th Dept.), *appeal dismissed,* 47 N.Y.2d 1008, 394 N.E.2d 290, 420 N.Y.S.2d 221 (1979); *Coopers & Lybrand v. Levitt,* 52 A.D.2d 493, 384 N.Y.S.2d 804 (1st Dept. 1976); *Fugazy Travel Bureau, Inc. v. Ernst & Ernst,* 31 A.D.2d 924, 298 N.Y. S.2d 519 (1st Dept.1969); *Shindler v. Lamb,* 25 Misc.2d 810, 211 N.Y.S.2d 762 (Sup.Ct.1959), *aff'd mem.,* 10 A.D.2d 826, 200 N.Y.S.2d 346 (1st Dept.1960), *aff'd mem.,* 9 N.Y.2d 621, 172 N.E.2d 79, 210 N.Y.S.2d 226 (1961).

The general rule of course is that attorney's fees are not recoverable as damages. *Coopers & Lybrand,* 52 A.D.2d at 496, 384 N.Y.S.2d at 806. However, under New York law, where the litigation is caused by the wrongful act of a third party, the person "is entitled to recover [from the third party] the reasonable value of attorneys' fees and other expenses thereby suffered or incurred." *Id.* at 496, 384 N.Y.S.2d at 807 (quoting *Shindler,* 25 Misc.2d at 812, 211 N.Y.S.2d at 765). Dr. Goldberg asserts that economic loss caused by time spent defending lawsuits falls within the category of "other expenses" recoverable under this rule.

Mallinckrodt argues that the exception does not apply when both parties were parties in the prior litigation, as is the case here. We agree. With respect to one action, the expenses incurred by Dr. Goldberg stem from defending Mallinckrodt's impleader action, whereas the exception invoked by Goldberg extends only to recovery of attorney's fees expended in disputes with third parties. *See Coopers & Lybrand,* 52 A.D.2d at 496–97, 384 N.Y.S.2d at 807 (refusing to apply exception where damage claim was for fees and expenses associated with defense of actions brought by present defendants, not third parties). Moreover, all the cases cited involve circumstances where the first party's wrongful conduct (here Mallinckrodt's fraud) exposed another (Dr. Goldberg) to litigation with a third party (the injured patients) in which the first party was not involved. Where the first party is actually in the litigation, the applicability of the exception to the general rule on attorney's fees is very doubtful. The first party in such circumstances will in all probability bear the laboring oar in defending the claim, and other parties such as Dr. Goldberg are free to assert whatever claims they have against the former, thereby disposing of all relevant claims in one action. We are most reluctant to extend this exception so as to authorize a second round of litigation over costs between parties who have already litigated the underlying claims.

Even if the exception did apply, however, the damage claimed by plaintiff does not fall within the scope of recovery allowed under the third party exception. Including personal time spent defending litigation in the phrase "other expenses" would be an excessively broad reading of that language. The term "expenses" is more suggestive of traditional litigation costs such as filing fees or fees paid to expert witnesses than of lost time away from one's profession, despite the fact that the latter certainly has value. None of the New York cases cited *supra* with respect to this exception holds that lost personal time is recoverable. In the absence of such a holding by the New York courts, we cannot equate litigation expenses, which are clearly recoverable, with time spent away from one's profession. The district court was thus correct in granting summary judgment for defendant on this claim.

### 2. *Damages for Emotional Distress*

Plaintiff also claims that the district court erred in dismissing his claim for damages based on the fact that he no longer performs myelograms. It is not clear whether the emotional trauma of witness-

ing the serious injuries to his two patients has left plaintiff emotionally unable to perform the procedure, or whether plaintiff has simply made a personal decision to refrain from the procedure because of the inherent danger associated with it, as illustrated by the Dimeray incidents.

To the extent that plaintiff's lost income is the result of a personal choice, it is beyond question not a direct result of defendant's alleged fraud. Moreover, even if he is disabled by the emotional trauma flowing from the past incidents, such emotional distress is not compensable under New York law. In *Bovsun v. Sanperi*, 61 N.Y.2d 219, 461 N.E.2d 843, 473 N.Y.S.2d 357 (1984), the New York Court of Appeals held that bystanders may recover for emotional distress damage only under very limited circumstances. The emotional disturbance suffered must be "serious and verifiable," *id.*, 61 N.Y.2d at 231, 461 N.E.2d at 849, 473 N.Y.S.2d at 363, and "must be tied, as a matter of proximate causation, to the observation of the serious injury or death of [an immediate] family member," *id.*, 61 N.Y.2d at 232, 461 N.E.2d at 849, 473 N.Y.S.2d at 363. Finally, the plaintiff must himself have been in the "zone of danger"—that is, he must himself have been exposed to a risk of bodily harm by the conduct of the defendant. *Id.*, 61 N.Y.2d at 233, 461 N.E.2d at 849, 473 N.Y. S.2d at 363.

Dr. Goldberg clearly does not meet two of these requirements. First, the persons whose injuries have allegedly caused the emotional distress and subsequent refusal to perform myelograms were patients, not immediate family members. Second, plaintiff was never himself exposed to risk of serious bodily injury from Dimeray, and thus was outside the "zone of danger." Indeed, *Bovsun* expressly reaffirmed *Kennedy v. McKesson*, 58 N.Y.2d 500, 448 N.E.2d 1332, 462 N.Y.S.2d 421, a case similar to the present one which held that a dentist could not recover for emotional distress suffered as a result of the death of his patient. *Bovsun*, 61 N.Y.2d at 232, 461 N.E.2d at 849, 473 N.Y.S.2d at 363.

Plaintiff attempts to avoid the *Bovsun* rule by relying on several cases involving more intentional or outrageous conduct in which recovery for emotional distress has been allowed. *See, e.g., Johnson v. State*, 37 N.Y.2d 378, 334 N.E.2d 590, 372 N.Y. S.2d 638 (1975) (recovery for emotional distress allowed where hospital misidentified body and negligently transmitted telegram announcing death of plaintiff's mother, who was actually alive and well in the hospital, with the mistake only being discovered after plaintiff closely examined the corpse at the wake). Such cases are factually inapposite. The district court was thus correct in dismissing the claim for emotional distress.

Affirmed.

LUMBARD, Circuit Judge, concurring and dissenting:

I agree that Goldberg's claim for damages due to his unwillingness to perform any more myelograms was properly rejected under New York law pertaining to damages for emotional distress. I believe, however, that the district court erred in holding that Goldberg's damages relating to time spent away from his medical practice defending lawsuits were too remote from the alleged fraud as a matter of law.

The complaint alleges that Mallinckrodt knew of the dangers associated with its product, Dimeray, and that it failed to disclose this information to physicians. Instead, Mallinckrodt allegedly touted the safety of Dimeray at physicians' conventions. The manufacturer of a product such as Dimeray owes a duty of great care in advising all those who use such a product regarding the dangers and risks involved. The physician must rely on what the manufacturer tells him.

If a physician is fraudulently induced to prescribe a test for a patient, and the patient becomes seriously ill, it is almost axiomatic that the physician will be involved in litigation with the patient. Of course, the patient charges the physician with negligence, or the physician is so charged when he is impleaded. Where patients believe

that they have been negligently injured, malpractice actions against physicians are now as certain as death and taxes.

I would hold that Goldberg's defense against his patients' lawsuits and his legal expenses are a "direct result" of Mallinckrodt's alleged fraud. Goldberg had no choice but to take such time from his practice as was necessary to defend himself adequately. Indeed, his insurance policy undoubtedly requires that he give reasonable assistance to counsel provided by his insurer in any litigation. The fact that Goldberg took time off from his practice to defend the lawsuits is thus a direct and foreseeable consequence of the alleged fraud. At any rate, there is enough of an issue on proximate cause to present a jury question. Consequently, summary judgment is not appropriate. *See Zeller v. Bogue Electric Manufacturing Corp.*, 476 F.2d 795, 803 (2d Cir.), *cert. denied*, 414 U.S. 908, 94 S.Ct. 217, 38 L.Ed.2d 146 (1973).

I also believe that Goldberg's lost time is recoverable under an exception to the general rule against awarding attorneys' fees and other legal expenses. If a defendant's wrongful act caused the plaintiff to become involved in litigation with a third party, the defendant may be liable for the plaintiff's attorneys' fees and legal expenses incurred in the earlier litigation. *See, e.g., Central Trust Co., Rochester v. Goldman*, 70 A.D.2d 767, 417 N.Y.S.2d 359 (4th Dept.), *app. dismissed*, 47 N.Y.2d 1008, 394 N.E.2d 290, 420 N.Y.S.2d 221 (1979).

As the majority points out, this exception applies only to plaintiff's expenses incurred in litigation with third parties and not to expenses incurred in litigation with the defendant itself; however, this qualification does not bar Goldberg's recovery. At least with respect to the direct action against him, it is clear that Goldberg's legal expenses resulted proximately from defending a lawsuit brought by a stranger to the present fraud action, his patient. *See Japcap Establishment Inc. v. Trust for Cultural Resources*, App.Div., 495 N.Y.S.2d

669, 671 (1st Dept.1985) (discussing third-party requirement).

Recovery of legal expenses under the exception is not thwarted simply because Goldberg impleaded Mallinckrodt. Goldberg bears the "laboring oar" in the direct action, and I see no reason why his bringing an indemnity claim against Mallinckrodt in that action should preclude him from seeking his litigation expenses in a separate fraud action. I disagree with the majority's holding that time spent by Goldberg to defend the lawsuits brought by his patients is not compensable under the exception as a legal expense. It is inevitable that a physician would have to take some time off from his practice in this type of situation. Thus, Goldberg should be able to recover damages for his lost time, just as he would with respect to any other necessary litigation expense.