Peter J. **VICINANZO, as Conservator of the Property of Joan Short Vicinanzo, and Peter J. Vicinanzo, Individually, Plaintiffs,**

v.

**BRUNSCHWIG & FILS, INC. and New England Mutual Life Insurance Company, Defendants.**

No. 88 Civ. 7975 (CLB).

United States District Court, S.D. New York.

June 19, 1990.

See also 739 F.Supp. 882.

Susan Corcoran, Birbrower, Montalbano, Condon & Frank, New City, N.Y., for plaintiffs.

Stephen Ruffino, Gibney, Anthony & Flaherty, New York City, Anderson, Banks, Moore, Curran, & Hollis (Maurice F. Curran, of counsel), Mt. Kisco, N.Y., for Brunschwig.

Kenneth Klein, Smith & Laquercia, P.C., New York City, for New England.

## MEMORANDUM AND ORDER

BRIEANT, Chief Judge.

The factual and procedural history of this ERISA lawsuit has been set forth in three previous opinions and requires little further discussion. The case involves plaintiffs' continuing rights, if any, under an employee benefit plan sponsored by Brunschwig & Fils, Inc. ("B & F") and issued by New England Mutual Life Insurance Company ("New England"). Defendants assert various crossclaims against each other, including a claim to the effect that New England acted in bad faith when it announced a separate premium structure known as "dual pooling." The Court has jurisdiction under 29 U.S.C. § 1132(e)(1987), 28 U.S.C. § 1331 (1980), and the principles of pendent jurisdiction.

By motion heard and fully submitted on April 24, 1990, B & F moves pursuant to Fed.R.Civ.P. 37(a)(2) to compel attorneys from New England's legal department to answer questions at an oral deposition as to what, if any, legal advice New England received in connection with its dual pooling decision. B & F contends that New England waived its attorney-client privilege in prior documentary and testimonial disclosures, and also argues that the substance of any legal advice upon which New England intends to rely in defending itself against claims of bad faith must be disclosed during discovery. By separate motion also heard and fully submitted on April 24, 1989, New England moves pursuant to

Fed.R.Civ.P. 12(c) to dismiss B & F's fifth crossclaim for bad faith conduct. New England asserts that neither punitive damages standing alone nor actual damages consisting solely of legal expenses are sufficient to support a cause of action under New York law.

### B & F's Rule 37 motion

■ B & F cites several instances in which it alleges that New England disclosed the substance of in-house legal advice, thereby waiving its privilege with respect to the subject of dual pooling. For example, when questioned about its dual pooling decision back in 1987, New England supposedly told B & F that its in-house lawyers had approved the decision. Later, during discovery in this action, New England produced internal memoranda showing that the legality of dual pooling had been *rejected* by the company's in-house lawyers in previous cases but that in the *Vicinanzo* case the underwriting department had received the "good news" that a couple of in-house lawyers had "bought into" the concept of dual pooling.[1] B & F's Memorandum In Support of Its Motion to Compel at 5, Exhibits E & F. The substance of these documents has been confirmed by oral testimony, which also has revealed that the legal department memorialized its advice in a written opinion. *Id.* at Exh. I (Excerpts from Deposition of David Chalmers). It should be emphasized, however, that none of the documents produced to date offer more than a glimpse into the law department's analysis of dual pooling. The closest that any of them comes to offering a detailed rationale seems to a statement that

> [a] legal concern is that it is imperative that the employee benefits representative *communicate to the employer* that in no event can they charge the affected employee or dependent more than the other insureds. In other words the charge for the insurance must be consist-ent with the other benefit class participants.

*Id.* at Exh. E.[2]

One can surmise that the New England lawyers who "bought into" the dual pooling concept did so because they believed that ERISA or the law of New York is concerned only with the fate of employees and their dependents and is indifferent to the practice of forcing employers to self-insure long-term expenses related to known catastrophic claims. *Id.* at Exh. E. But in the absence of the written opinion relied upon by New England, which has not been produced to date, the details of the legal department's analysis remain unknown. One can do little more than speculate as to the department's reasoning on the basis of remarks made by non-legal personnel.

B & F argues, quite correctly, that the "voluntary production of a privileged document effects a waiver of the privilege as to all other privileged communications concerning the same subject matter." *Standard Charter Bank PLC v. Ayala International Holdings (U.S.) Inc.*, 111 F.R.D. 76, 85 (S.D.N.Y.1986). But in this case New England has not yet produced privileged materials. Not only do the essential features of its in-house legal advice remain confidential—itself an indication that the privilege has been preserved—but each time New England has adverted to obtaining clearance from counsel it has summarized counsel's opinion in conclusory and unrevealing terms, thereby indicating an intention to the preserve the privilege. None of these statements reasonably can be regarded as a knowing and voluntary waiver. We therefore reject the notion that New England already has waived its privilege and direct our attention to whether New England intends to assert an advice-of-counsel defense to B & F's (or plaintiffs') claims of bad faith.

It has long been recognized that the parties to a lawsuit may not use the attorney-client privilege as both shield and sword. In *Trans World Airlines, Inc. v. Hughes,*

---

1. Did they "buy in" after some undisclosed sales pitch from underwriters, or did they "sell out"?

2. This egregious gibberish concludes: "If you have any questions please don't hesitate to discuss with me."

332 F.2d 602, 615 (2d Cir.1964), for example, our Court of Appeals upheld a district court ruling to the effect "that the attorney-client privilege claimed by the defendants ... had been waived as the result of the defendants' pleading advice of counsel as a defense and as a result of two affidavits, one of which was submitted to the [Civil Aeronautics Board] by [one of defendants'] attorneys."

■ Modern discovery "advances the stage at which [a] disclosure can be compelled from the time of trial to the period preceding it, thus reducing the possibility of surprise." *Hickman v. Taylor,* 329 U.S. 495, 507, 67 S.Ct. 385, 391, 91 L.Ed. 451 (1947). Factual matters reasonably likely to lead to the discovery of admissible evidence must be produced upon request so that "civil trials in the federal courts no longer need be carried on in the dark." *Id.* at 501, 67 S.Ct. at 389. Where a party intends to rely at trial on the advice of counsel as a defense to a claim of bad faith, that advice becomes a factual issue, and opposing counsel is entitled to know not only whether such an opinion was obtained but also its content and what conduct it advised. A party who intends to rely at trial on the advice of counsel must make a full disclosure during discovery; failure to do so constitutes a waiver of the advice-of-counsel defense.

Unless New England makes full and immediate disclosure of all legal opinions pertaining to the *Vicinanzo* dual pooling decision, and other such pooling decisions prior in time to *Vicinanzo,* it shall be precluded at trial from asserting an advice-of-counsel defense.[3] Similarly, since the question of whether New England acted in bad faith does not arise solely in connection with B & F's fifth crossclaim, and since plaintiffs allege intentional misconduct as well, our ruling applies with equal force in the con-text of plaintiffs' case.[4] The Court therefore denies Brunschwig's motion to compel but directs New England either to produce the documents sought and the in-house lawyers who participated in their preparation within thirty (30) days or to abandon its advice-of-counsel defense.

### New England's Rule 12(c) motion

■ In addition to its fourth crossclaim for a declaratory judgment on the lawfulness of dual pooling, B & F pleads a fifth claim for punitive damages based on New England's bad faith. Apparently attempting to avoid the necessity of asserting good faith reliance on the opinion of counsel, which would result in a waiver of the attorney-client privilege with respect to the entire subject of dual pooling, New England moves to dismiss B & F's fifth claim on the ground that B & F has failed to set forth any cognizable claim for compensatory damages.

Under New York law, a cause of action for punitive damages must be accompanied by a valid claim for compensatory damages. *Hubbell v. Transworld Life Insurance Co.,* 50 N.Y.2d 899, 430 N.Y.S.2d 589, 408 N.E.2d 918 (1980). Even if New England's dual pooling decision is found to be an outrageous or willful violation of law, B & F can prevail on its claim for punitive damages only if it first recovers compensatory damages for that violation. *Id.*

B & F seeks to satisfy the requirement of actual injury by claiming that its legal fees in defending against Mrs. Vicinanzo's claims are recoverable as general compensatory damages. This, in essence, represents a tort claim, for B & F asserts that New England, by announcing its dual pooling decision, acted contrary to law and in a manner reasonably likely to cause harm to B & F. Under established legal principles, it does not matter whether New England

---

**3.** The Court amends its earlier ruling and directs New England to disclose *all* legal advice under federal or New York law pertaining to the subject of dual pooling, regardless of whether such advice was given in connection with Mrs. Vicinanzo's claims.

**4.** We express no view as to the sufficiency of plaintiffs' second claim (conspiracy to violate ERISA) and fifth claim (willful breach of contract). We do note, however, that the issue raised by New England's motion to dismiss—the absence of compensable injury sufficient to support a claim for punitive damages—seems inapposite where, as here, plaintiffs' claim of intentional misconduct includes allegations of actual, benefit-of-the-bargain damages.

specifically anticipated that B & F would be sued by Mrs. Vicinanzo and would incur substantial legal costs. In the landmark case of *Petition of Kinsman Transit Company*, 338 F.2d 708 (2d Cir.1964), the Court of Appeals noted that "[t]he weight of authority in this country rejects the limitation of damages to consequences foreseeable at the time of the negligent conduct when the consequences are 'direct,' and the damage, although other and greater than expectable, is of the same general sort that was risked." New England therefore cannot be heard to complain that B & F's expenses in defending against Mrs. Vicinanzo's claims were not reasonably foreseeable, although it remains to be determined at trial whether New England's conduct was the direct cause of these expenses or whether B & F's own breach of a legal duty was an intervening cause.

There is some question as to whether a party can recover against its co-defendant for legal expenses incurred in defending against a common plaintiff. In *Goldberg v. Mallinckrodt, Inc.*, 792 F.2d 305 (2d Cir. 1986), our Court of Appeals explained that "[t]he general rule of course is that attorney's fees are not recoverable as damages. *Coopers & Lybrand [v. Levitt]*, 52 A.D.2d [493] at 496, 384 N.Y.S.2d [804] at 806 [ (1st Dept.1976) ]. However, under New York law, where the litigation is caused by the wrongful act of a third party, the person "is entitled to recover [from the third party] the reasonable value of attorneys' fees and other expenses thereby suffered or incurred." *Id.* at 496, 384 N.Y.S.2d at 807 [citation omitted].

*Id.* at 309. Relying on this exception, B & F contends that New England's dual pooling decision caused injury by exposing B & F to extended and costly litigation with Mrs. Vicinanzo. New England responds by arguing that the exception invoked by B & F extends only to the recovery of legal fees expended in *separate lawsuits* with third parties. New England points to the fact that in *Goldberg v. Mallinckrodt, Inc., supra*, the Court of Appeals held that legal fees are recoverable only "where the first party's wrongdoing" (here New England's

dual pooling decision) "exposed another" (B & F) "to litigation with a third party" (Mrs. Vicinanzo) "in which the first party was not involved." *Id.* at 309. As the Court of Appeals explained,

> Where the first party is actually in the litigation, the applicability of the exception to the general rule on attorney's fees is very doubtful. The first party [here New England] in such circumstances will in all probability bear the laboring oar in defending the claim, and other parties [here, B & F] ... are free to assert whatever claims they have against the former, thereby disposing of all relevant claims in one action. We are most reluctant to extend this exception so as to authorize a second round of litigation over costs between parties who have already litigated the underlying claims.

*Id.*

We can conceive of no reason why New York law should be interpreted in this fashion. Why should B & F's right to recover legal fees from New England depend on whether plaintiffs have elected to bring two separate actions or a single consolidated suit? Any suggestion that B & F has let New England "bear the laboring oar" in this litigation simply cannot be supported by the record in this case. Both B & F and New England have adopted litigation postures consistent with their adverse interests, and at no time has B & F been content to let New England carry the burden of defending against Mrs. Vicinanzo's claims.

Nor are we persuaded by the argument that parties to a single litigation who are free to litigate "underlying claims" against each other should be barred from engaging in a "second round of litigation over costs." *Goldberg*, 792 F.2d at 309. This argument misapprehends New York law, for the recovery of legal expenses incurred in defending against third party claims *never* involves what is traditionally regarded as "litigation over costs." Rather, it involves the assertion of an "underlying claim"—a direct cause of action for the recovery of what might be called damages for exposure to litigation. Thus, if New England's unlawful conduct did in fact expose B & F to

undeserved litigation, B & F should be entitled to recover its legal expenses regardless of whether New England is a party to the same lawsuit.

At present, however, we need not rule on the question of whether B & F is precluded under *Goldberg* from suing for legal expenses incurred in defending against Mrs. Vicinanzo's claims. For purposes of a motion under Fed.R.Civ.P. 12(c), the record before this Court includes only the parties' rather conclusory pleadings. We therefore decline to assume that B & F's only compensable injuries consist of legal expenses, and deny New England's motion without prejudice and with leave to renew at the close of trial.

In order to facilitate our consideration of a subsequent motion, counsel for all parties are directed to prepare and exchange proposed special interrogatories for the jury on the issue of damages.

A final pretrial conference will be held on September 25, 1990 at 9:00 A.M. in Courtroom 31. The case will be tried as soon thereafter as the Court's schedule then permits.

SO ORDERED.