OPINION OF THE COURT
Meyer, J.
A complaint which alleges that plaintiff, a dentist, delivered to defendants for repair an anesthetic machine he had purchased from them, that defendants were negligent in replacing the color-coded decals on the machine with the result that, intending to administer oxygen to a patient, *503 plaintiff in fact administered nitrous oxide, causing the death of the patient, that as a result plaintiff’s mental condition was such that he was unable to carry on his professional work and because of the damage to his reputation was obliged to withdraw from practice states a valid cause of action permitting recovery by plaintiff for such pecuniary loss as may be proved but not permitting recovery for the emotional injury claimed to have resulted. The order of the Appellate Division (88 AD2d 785) should, therefore, be modified, with costs to the appellant, to reinstate so much of the complaint as seeks to recover damages for other than emotional injuries and, as so modified, affirmed.
I
The complaint, the sufficiency of which is the subject of this appeal, alleges the following facts: Plaintiff is a dental surgeon. Defendant Hradil is an employee of defendant Norton-Starr, Inc. Norton is a distributor of products of defendant McKesson Company. Plaintiff bought through Hradil a McKesson anesthetic machine. In September, 1976, he arranged through Hradil and Norton for the overhaul and adjustment of the machine. When the machine was returned the color-coded identification decals for the oxygen and nitrous oxide connections had been reversed and defendants had failed to install, or inform plaintiff that they could install, connectors of different sizes for the oxygen and nitrous oxide which would have prevented improper connection of the machine. On December 10,1976, plaintiff removed four wisdom teeth from the mouth of a patient and upon completion of the extraction adjusted the machine to administer 100% oxygen to the patient. In fact the patient received 100% nitrous oxide as a result of which she died. A civil action against plaintiff for damages for wrongful death of the patient resulted, and there was a criminal investigation all of which resulted in plaintiff’s mental ill health, damaged his reputation, and caused him permanently to withdraw from practice.
Defendants moved to dismiss the complaint for failure to state a cause of action. Supreme Court held that defendants having breached a duty owed to plaintiff, he was entitled to recover for emotional harm as well as for any *504 pecuniary loss sustained. The Appellate Division reversed and dismissed the complaint holding that no cause of action was stated when emotional harm results indirectly through the reaction of the plaintiff to injury negligently caused to another.
II
Dismissal of the complaint was clearly erroneous, for Becker v Schwartz (46 NY2d 401, 413) and Johnson v State of New York (37 NY2d 378, 383) both recognized that a plaintiff who states a cause of action in his own right predicated upon a breach of duty flowing from defendant to plaintiff may recover the pecuniary expenses he has borne as a result of that breach.
The more difficult question is whether damages for emotional injury are recoverable. Examination of our decisions involving recovery for emotional harm reveals three distinct lines of cases.* The first recognizes that when there is a duty owed by defendant to plaintiff, breach of that duty resulting directly in emotional harm is compensable even though no physical injury occurred. That principle had its beginning in Ferrara v Galluchio (5 NY2d 16). That was a malpractice action in which plaintiff recovered from defendant, a specialist in X-ray therapy, for radiodermatitis caused by excessive radiation, the sum of $25,000, which included $15,000 for mental anguish arising from cancer-phobia induced by a dermatologist’s advice to plaintiff that she should be checked every six months because of the possibility that cancer might develop. We held (at p 21) that “[flreedom from mental disturbance is now a protected interest in this State” and that the evidence presented a sufficient guarantee of germaneness to permit the jury to pass upon the claim. It was extended in Battalla v State of New York (10 NY2d 237 [failure properly to lock ski-lift belt]), Johnson v State of New York (37 NY2d 378, supra [false information that plaintiff’s mother had died]) and Lando v State of New York (39 NY2d 803 [failure for 11 days to recover plaintiff’s daughter’s body]) to allow recovery for emotional injury by a plaintiff to whom a direct *505 duty was owed, even though unlike plaintiff Ferrara, plaintiffs Battalia, Johnson and Lando incurred no physical injury. At least under the circumstances of those cases, we held, the sophistication of the medical profession and the likelihood of genuine and serious mental distress arising from the circumstances of the case warranted allowing the jury to weed out spurious claims, though there was no contemporaneous physical harm to provide an index of reliability.
The second group of cases has its genesis in Tobin v Grossman (24 NY2d 609). The issue there was whether the operator of a motor vehicle who caused injury to plaintiff’s two-year-old son owed a duty also to plaintiff on the basis of which she could recover for her injuries due to shock and fear for her child even though she did not view the accident. After extended discussion of foreseeability of the injury, proliferation of claims, fraudulent claims, inconsistency of the zone of danger rule, unlimited liability, unduly burdensome liability, and the difficulty of circumscribing the area of liability, we declined to recognize the claimed duty because “there appears to be no rational way to limit the scope of liability” other than drawing arbitrary distinctions (24 NY2d, at p 618), and “[t]here are too many factors and each too relative to permit creation of only a limited scope of liability or duty” (supra, at p 619). Similar cases are Lafferty v Manhasset Med. Center Hosp. (54 NY2d 277) dismissing an action by a daughter-in-law who witnessed a negligent blood transfusion of her mother-in-law and participated in the ensuing efforts to save the mother-in-law, and Vaccaro v Squibb Corp. (52 NY2d 809) dismissing a complaint by the mother of a child born with severe birth defects as the claimed result of the mother’s ingestion of a drug, which alleged no physical injury to the mother.
The third branch of the emotional injury decisions involves the violation of a duty to plaintiff which results in physical injury to a third person but only financial or emotional harm or both to the plaintiff. Progenitor in that line is Howard v Lecher (42 NY2d 109), in which recovery was sought for the emotional (but not financial, see, supra, at p 115) injury to the parents of a two-year-old child afflicted with Tay-Sachs disease whom they had had to *506 watch degenerate and die. We held that a complaint which alleged defendant obstetrician’s awareness of plaintiff’s eastern European lineage and consequent susceptibility of their offspring to the disease and his failure to take or evaluate a history or to cause proper tests to be made, failed to state a cause of action. Notwithstanding the presence in Howard of a duty of the doctor to the parents absent in Tobin (supra), we denied recovery on the policy reasoning of Tobin. Becker v Schwartz and Park v Chessin (46 NY2d 401) involved claims on behalf of the parents of children born with Down’s Syndrome and polycystic kidney disease resulting from claimed similar malpractice of the obstetrician involved. Though we upheld the parents’ claim for pecuniary damages resulting from the duty flowing from defendants to them, we refused to permit recovery for psychic or emotional harm because, as in Howard, to do so would have “ ‘inevitably led to the drawing of artificial and arbitrary boundaries’ ” (46 NY2d, at pp 413-414, quoting from Howard v Lecher, 42 NY2d, at p 113).
The rule to be distilled from those cases is that there is no duty to protect from emotional injury a bystander to whom there is otherwise owed no duty, and, even as to a participant to whom a duty is owed, such injury is compensable only when a direct, rather than a consequential, result of the breach. The fear and upset induced by being left suspended high above the ground on an insecure ski lift is compensable, but that which results from the death of a patient under the circumstances described in the instant complaint is not. It will not do to argue as did the dissenters below that the injury here was inflicted directly upon plaintiff and the death of the patient was only an unintended result of defendant’s breach of duty. The duty in Howard and in Becker (supra) was as direct and the resulting deaths as unintended as in the present case.
Nor is it an answer to suggest as do the dissenters here that plaintiff seeks recovery not because he observed the patient die but because he was, as a result of defendant’s negligence, the very instrument of her death, and that Becker can be distinguished by reason of its reference to the mitigating joy of parenting a child “that even an abnormality cannot fully dampen” (46 NY2d, at pp 414- *507 415). The mothers, if not the fathers, involved in Howard (supra) and Becker were equally, though more painfully because over a much longer period, the cause of death of their infants, and the speculativeness of damage was only one among many of the policy factors considered in Tobin in the search for a “rational practical boundary for liability” (24 NY2d, at p 618). Moreover, the dissent’s repeated reference to liability to more than one person (at pp 508, 509) misconceives the court’s holding in this case, which is simply that recovery for breach of duty includes damages for emotional injury only to the extent that that injury results directly rather than consequentially. Thus, had defendant’s breach resulted in gases escaping from the machine and ruining a family manuscript or portrait, plaintiff’s recovery would be limited to the value of the physical item; recovery of the sentimental or emotional loss consequent upon its destruction would not be permitted (Lake v Dye, 232 NY 209, 214; Furlan v Rayan Photo Works, 171 Misc 839; Twersky v Pennsylvania R. R. Co., 152 Misc 300; Valentino v Nasio Studio, 136 Misc 826).
If the distinction thus drawn appears overfine that is the inevitable result of the fact that the drawing of any line necessarily differentiates between close cases. But to extend the rule as plaintiff argues and as would the dissenters here and below would be not only to ignore stare decisis but also to face Trial Judges and juries with a distinction extremely difficult, if not impossible, to articulate or conceptualize. It would, moreover, be anomalous, allowing recovery for emotional injury by the dentist but denying such recovery to members of the patient’s family.
For the foregoing reasons, the order of the Appellate Division should be modified, with costs to appellant, to reinstate so much of the complaint as seeks to recover damages for other than emotional injuries and, as so modified, affirmed.

 A fourth allows recovery for outrageous conduct causing mental disturbance, an intentional tort (compare PJI 3:6, with PJI 2:284).