Kaye, J.
(dissenting). Permitting recovery for emotional distress from observing physical injury to another is a departure from precedent and recognition of a new duty. Because sound policy considerations supported this court’s decisions consistently denying such recovery, because no reason is given for a change, and because the limitations now imposed are artificial and arbitrary, and must in fairness give way to far-reaching liability affecting the public generally, I respectfully dissent.
On no less than six occasions during the last 15 years, this court has considered, and rejected, claims for emotional distress allegedly resulting from observing injury negligently inflicted upon another.[1] Those decisions reflect a recognition that to allow recovery for such injuries would require the creation of a new duty and therefore an entirely new cause of action (Tobin v Grossman, 24 NY2d 609, 613), because “there is no duty to protect from emotional injury a bystander to whom there is otherwise owed no duty, and, even as to a participant to whom a duty is owed, such injury is compensable only when a direct, rather than a consequential result of the breach.” (Kennedy v McKesson Co., 58 NY2d 500, 506.) This is so even where a single negligent act concurrently injures both the plaintiff and the third person. Each may recover for personal pecuniary, bodily and psychic injury, but not for the trauma of seeing the other harmed. (Kennedy v McKesson Co., 58 NY2d 500, supra; Becker v Schwartz, 46 NY2d 401.)
To suggest, as the majority does, that it is neither creating a new duty nor overruling those decisions because we are today presented with different facts, is merely to *235 sidestep the issue. Our decisions, from Tobin to Kennedy, were not unrelated factual determinations. They rested on sound policy considerations.
A review of those decisions reveals the significance of the step taken today. In Tobin v Grossman (24 NY2d 609, supra) we denied recovery for psychic injuries suffered by a mother whose child was struck by an automobile. The Restatement “zone-of-danger” rule was rejected. “This has been said to be a rather arbitrary limiting rule which has the unpalatable consequence that a mother who fears for herself may recover while, if she does not or has no such similar opportunity, she may not recover.” (Id., p 616.) A broader rule, allowing recovery by witnesses to an accident, was also rejected because such a limitation “could stand only until the first case came along in which the parent is in the immediate vicinity but did not see the accident.” (Id., p 617.)
The Tobin court focused on the real issue presented, which is whether recovery for all emotional trauma caused by injuries to others should be compensable. In Tobin it was recognized that “[t]here are too many factors and each too relative to permit creation of only a limited scope of liability or duty” (id., p 619) and that there was no “reasonable circumscription, within tolerable limits required by public policy, of a rule creating liability” (id., p 617). The court then determined, as a matter of policy, that “no cause of action lies for unintended harm sustained by one, solely as a result of injuries inflicted directly upon another, regardless of the relationship and whether the one was an eyewitness to the incident which resulted in the direct injuries” (id., p 611) because the recognition of such a cause of action would inevitably lead, through compulsory insurance, to an undue burden on the public (id., p 617), and the nature of this harm is such that the cost should not be borne by society: “Beyond practical difficulties there is a limit to attaining essential justice in this area. While it may seem that there should be a remedy for every wrong, this is an ideal limited perforce by the realities of this world. Every injury has ramifying consequences, like the ripplings of the waters, without end. The problem for the law is to limit the legal consequences of wrongs to a *236 controllable degree. The risks of indirect harm from the loss or injury of loved ones is pervasive and inevitably realized at one time or another. Only a very small part of that risk is brought about by the culpable acts of others. This is the risk of living and bearing children. It is enough that the law establishes liability in favor of those directly or intentionally harmed.” (Id., p 619.)
In Howard v Lecher (42 NY2d 109) the issue presented was whether parents could recover from a doctor, who negligently failed to advise them of the risk, for the mental distress they suffered as a result of their infant daughter having been born with a genetic degenerative disease. Recovery for such psychic injury was again denied because “to afford the parents relief as against the doctor would require the extension of traditional tort concepts beyond manageable bounds”. {Id., p 111.) There was no question that the parents’ suffering was genuine and provable. Recovery was denied on policy grounds: “[T]he law has repeatedly denied recovery for mental and emotional injuries suffered by a third party as a result of physical injuries sustained by another (Tobin v Grossman, 24 NY2d 609, and cases cited therein; Shaner v Greece Cent. School Dist. No. 1, 51 AD2d 662; Bessette v St. Peter’s Hosp., 51 AD2d 286; Roher v State of New York, 279 App Div 1116). No cause of action exists, irrespective of the relationship between the parties or whether one was a witness to the event giving rise to the direct injury of another, for the unintentional infliction of harm to a person solely by reason of that person’s mental and emotional reaction to a direct injury suffered by another. Thus, in Tobin v Grossman (supra), we denied recovery to a mother traumatized by the injuries suffered by her child as the result of the negligent operation of an automobile by another. Our court there recognized, as we now do, that the plaintiff parent suffered as genuinely as if she herself were the object of the injury which resulted from the impact suffered by the child. However, we also recognized then, as now, that the law must establish, circumscribe and limit the rules ascribing liability in a manner which accords with reason and practicality.” (42 NY2d, p 112.)
When the Howard dissenters contended that Tobin did not apply on its facts and that the mother should recover *237 because, as the patient of the defendant doctor, she was in the “sphere of duty,” but the father should not, the court simply saw this as an example of the wisdom of applying the Tobin rule that, as a matter of policy, no duty exists: “Sound policy reasons and unlimited hypothesis present themselves. To now extend the perimeter of liability would inevitably lead to the drawing of artificial and arbitrary boundaries. Indeed, the dissenting opinion illustrates the arbitrary nature of such a holding, for it would allow the mother of the deformed child to recover while the father is entitled to no relief. Yet, both parents contend that the injury to them stemmed from the trauma occasioned by viewing the degeneration of their daughter. Can it be said that the mother’s injury was more direct or of a greater magnitude? The law of liability should not turn on hyper-technical and fortuitous considerations of this type.” (id., p 113.)
One year later in the companion cases of Becker v Schwartz and Park v Chessin (46 NY2d 401, supra) parents again asserted causes of action for emotional distress caused by doctors’ failure to advise them of the risk that their child would be born with a serious impairment. In Becker the mother gave birth to a brain-damaged infant who would suffer her entire life from Downs’ syndrome, and in Park the child had a hereditary polycystic kidney disease, from which the child suffered and eventually died. The causes of action by the parents for psychic injury due to observing the injuries to their children were dismissed, again for the policy reason that such a duty, once recognized, could not be limited within acceptable boundaries, even though the court recognized a concurrent duty to the parents had been breached by the doctors, entitling the parents to recover the pecuniary expenses of the necessary care furnished to their impaired children: “Of course, this is not to say that plaintiffs may recover for psychic or emotional harm alleged to have occurred as a consequence of the birth of their infants in an impaired state. The recovery of damages for such injuries must of necessity be circumscribed. Controlling on this point is Howard v Lecher * * * While sympathetic to the plight of these parents, this court declined for policy reasons to sanction the recov *238 ery of damages for their psychic or emotional harm occasioned by the birth and gradual death of their child. To have permitted recovery in Howard, we observed, would have ‘inevitably led to the drawing of artificial and arbitrary boundaries.’” (46 NY2d, pp 413-414.) Two years later, a cause of action by parents for psychic harm due to the birth of a daughter without limbs allegedly caused by ingestion of a drug during pregnancy was dismissed in Vaccaro v Squibb Corp. (52 NY2d 809) for the reasons set forth in Howard and Becker.
In Lafferty v Manhasset Med. Center Hosp. (54 NY2d 277) a unanimous court denied recovery to a plaintiff for psychic injury she suffered by observing her mother-in-law receive a transfusion of mismatched blood and thereafter participating in the effort to save her. Once again, the basis for the denial was the policy set forth in Tobin that such a duty running to persons who observe injuries to others cannot be recognized because, once it is, it cannot reasonably be contained: “In essence the case merely represents another effort to extend existing principles of law so as to expand the liability of the negligent actor to include third parties who suffer shock as a result of direct injury to others (Tobin v Grossman, 24 NY2d 609; Howard v Lecher, 42 NY2d 109; Becker v Schwartz, 46 NY2d 401; Vaccaro v Squibb Corp., 52 NY2d 809). As we noted in the Tobin case, the major obstacle to recognizing this theory of recovery is that ‘there appears to be no rational way to limit the scope of liability’ (Tobin v Grossman, supra, p 618).” (54 NY2d, p 279.) The court in Lafferty also explained that Johnson v State of New York (37 NY2d 378), which allowed recovery for mental trauma without the threat of physical injury, did not require a different result, as that was not, as here, a claim for psychic injury based upon a breach of duty causing physical injury to another: “Our recent decision in Johnson v State of New York (37 NY2d 378) holding the defendant liable for erroneously informing the plaintiff of her mother’s death, does not represent an abandonment of these concerns. That case did not involve an extension of the defendant’s liability for negligently injuring or causing the death of the plaintiff’s mother, who had not been injured by the defendant and *239 was not in fact dead. Liability was based entirely on a duty the defendant had undertaken to inform the plaintiff of her mother’s status. That duty was owed directly to the plaintiff and was breached when the defendant erroneously informed the plaintiff that her mother had died. Although it was also noted in that case that injury to the plaintiff was foreseeable, that alone is not sufficient to establish liability when, as here, there is no showing of any duty owed to the plaintiff (see, e.g., Tobin v Grossman, supra, p 615; cf. Pulka v Edelman, 40 NY2d 781, 785).” (54 NY2d, p 280.)
Only last term, in Kennedy v McKesson Co. (58 NY2d 500, supra), recovery for psychic injury was denied to a dentist who, due to defendants’ negligent repair and labeling of an instrument, unknowingly administered nitrous oxide instead of oxygen, resulting in his patient’s death. Recovery was denied even though there was a contemporaneous breach by defendants of a duty to plaintiff, for which he would be able to recover his own pecuniary losses. Once again, this result flowed from the reasons expressed in the prior cases, from Tobin to Lafferty: “The rule to be distilled from those cases is that there is no duty to protect from emotional injury a bystander to whom there is otherwise owed no duty, and even as to a participant to whom a duty is owed, such injury is compensable only when a direct, rather than a consequential, result of the breach.” (58 NY2d, p 506.)
The Kennedy court expressly rejected the contention of the Appellate Division dissenters (88 AD2d 785) that the concurrent breach of duty to plaintiff made the psychic injuries caused by viewing the physical injuries to another more “direct” or that, in effect, to permit recovery of such psychic injuries would not require the establishment of a new duty because such injuries would just be another item of damages flowing from the breach of a duty to plaintiff. That contention is indeed very close to the view adopted by the majority today.
The Kennedy dissenters in this court urged that the psychic injury suffered by the plaintiff was not “vicarious injury, that is one sustained by virtue of observing an injury to another” but was instead a direct injury “as a *240 result of being made, by virtue of the defendants’ negligence, an active participant in his patient’s death.” (58 NY2d, p 511 [Jasen, J., dissenting].) It was acknowledged that the “policy concern” expressed in Tobin limited liability “at the point of the third party observer — that being a person who suffered solely by virtue of the emotional trauma of observing another being injured as a result of defendant’s breach of duty owed that other person” and that, even though a duty to plaintiff was breached as well, “[h]ad he alleged that his trauma resulted from observing a patient die, rather than causing her death * * * Tobin would bar the cause of action”. (Id., p 518 [emphasis added].)
Thus, there can be no doubt that this court’s denial of recovery for emotional distress caused by observing physical injury negligently inflicted upon another has not been grounded on particular factual nuances but instead reflects both a limitation of the concept of duty to that which is personal and direct, even when injury to the plaintiff and the third person is caused by a single negligent act, and a consistent policy determination to circumscribe liability in the public interest.
What then has changed? The imposition of a new duty of course requires “extreme care, for legal duty imposes legal liability.” (Pulka v Edelman, 40 NY2d 781, 786.) In declining to recognize the very duty established today, this court explained almost 15 years ago that: “Unlike the factors which have brought about most expanding tort concepts, here there are no new technological, economic, or social developments which have changed social and economic relationships and therefore no impetus for a corresponding legal recognition of such changes. Hence, a radical change in policy is required before one may recognize a cause of action in this case.” (Tobin v Grossman, 24 NY2d 609, 615, supra.) With no impetus in new technological, economic or social developments, and no other explanation, the majority today allows recovery where a plaintiff in the “zone of danger” experiences “serious and verifiable” emotional distress resulting from witnessing serious physical injury inflicted by defendant on a member of plaintiff’s immediate family. Just such boundaries were previously recog *241 nized as “artificial and arbitrary,” and “hypertechnical and fortuitous.”
To suggest that even these limitations can contain liability, once the duty to compensate for observing injury to another is recognized, is to ignore this court’s own teachings. At the least, limitations such as “zone of danger” and “serious and verifiable” emotional disturbance present jury questions that will make it difficult ever to have claims for such injuries dismissed prior to trial.[2] The apparent dearth of appellate opinions on this topic (majority opn, p 229, n 7) is not a reliable signal that recoveries will be few. What is overlooked is the universe of litigation that stops short of appellate review and the practice among insurance carriers to pass along added costs to their consumers — the very danger recognized in Tobin.
The Tobin rule is defensible, in that for articulated policy reasons recovery has been uniformly denied. This is a recognition of two principles firmly rooted in our law: first, that in the interest of the public generally, which must eventually bear the cost, not every injury can be compensable, even when suffered as a consequence of another’s negligence. (De Angelis v Lutheran Med. Center, 58 NY2d 1053, 1055; Albala v City of New York, 54 NY2d 269,274.) Second, in a negligence action a “plaintiff sues in her own right for a wrong personal to her, and not as the vicarious beneficiary of a breach of duty to another.” (Palsgraf v Long Is. R.R. Co., 248 NY 339, 343.)
The rule articulated today both lacks certainty and imposes limitations that are not fair.[3] The central limiting *242 factor is that plaintiff be in the “zone of danger,” described as the majority rule in this country.* **[4] But there is no rational relation between the “zone of danger” and the recovery allowed today. The “zone of danger” is a concept tied to a breach of duty to a person subjecting him to risk of personal physical injury. The recovery allowed today, however, is not for a breach of that duty but rather for observing the effect of a defendant’s breach of duty to another that in fact causes serious physical injury to that other person. Any duty not to subject a person to emotional distress from observing physical injuries to another would be breached when the other person is injured, whether or not the observer is within the “zone of danger.” (See Tobin v Grossman, 24 NY2d 609, 617, supra.) Moreover, as a matter of fairness, one parent is no more entitled to recover for mental distress from observing a child’s injury than another who suffered the same anguish though not technically within the “zone of danger.” It is perhaps for these reasons that so many other jurisdictions have, like this court in the past, sharply criticized the “zone-of-danger” rule.[5]
The other barriers erected today similarly are not rationally related to the new cause of action but are, like the *243 “zone-of-danger” rule, simply responses to the court’s well-founded fears about massive verdicts, the cost of which will ultimately be borne by the public. Given the absence of any demonstrated reason to change the rule in this jurisdiction, these concerns would be better addressed by adherence to the Tobin rule.

. (Kennedy v McKesson Co., 58 NY2d 500; Lafferty v Manhasset Med. Center Hosp., 54 NY2d 277; Vaccaro v Squibb Corp., 52 NY2d 809; Becker v Schwartz, 46 NY2d 401; Howard v Lecher, 42 NY2d 109; Tobin v Grossman, 24 NY2d 609.)

. The majority’s treatment of the actual cases before this court itself illustrates the point. In the Bovsun case, the injury to Jack Bovsun did not take place in plaintiffs’ presence. While on the one hand requiring that the injury to an immediate family member take place in plaintiff’s “contemporaneous observation,” the majority reverses a dismissal of the complaint because plaintiffs became “instantly aware of * * * the fact that Jack Bovsun must have been injured”. (Majority opn, pp 224-225.) Thus, for purposes of legal sufficiency of a complaint, the requirement that injury take place in plaintiff’s presence has not even survived the articulation of the new rule. Similarly, in Kugel, it appears that the injuries from which the infant Stephanie Kugel succumbed at some time after the accident were internal. There is no allegation or showing that “serious physical injury” ascertainable by “contemporaneous observation,” under the majority’s test, occurred. Nonetheless both complaints are sustained. Although essential elements of the new formula are absent in both cases, the majority concludes that “it was error to foreclose plaintiffs from proceeding to trial” (majority opn, p 225, n 1).

. The new rule is marked by inconsistencies and uncertainties. The actual “zone of danger” is necessarily different for every case. From the treatment of the cases before the court today it is apparent that contemporaneous observation and contemporaneous *242 injury are inexact concepts. The requirement of “serious and verifiable” emotional disturbance, which may be shown by lay testimony, will not deter persons from pressing claims for more indirect and tenuous psychic injuries before juries. The court’s failure to define “the outer limits of ‘the immediate family’ ” (majority opn, p 233, n 13) similarly leaves open a host of questions. The complexity of such questions for juries will plainly far exceed any difficulties being obviated by the new rule (majority opn, p 231, n 10).

. Under the court’s articulation of the new rule, one can recover for psychic injuries caused by witnessing a third person’s physical injury even without fear for one’s safety. The only requirement is that, as an objective matter, the plaintiff was threatened. It is far from clear that a majority of States would allow recovery in the absence of the plaintiff’s fear for his or her own safety (see, e.g., Strazza v McKittrick, 146 Conn 714; Klassa v Milwaukee Gas Light Co., 273 Wis 176; but see Bowman v Williams, 164 Md 397).

. The zone-of-danger rule has been repeatedly criticized in other jurisdictions as hopelessly artificial (Dillon v Legg, 68 Cal 2d 728, 733); harsh and artificial (Barnhill v Davis, 300 NW2d 104, 107 [Iowa]); lacking “strong logical support” because it inadequately measures foreseeability of plaintiff’s mental distress (Dziokonski v Babineau, 375 Mass 555, 564); representing “an unnecessarily narrow and rigid limit on liability” (Culbert v Sampson’s Supermarkets, 444 A2d 433, 436 [Me]); “based upon a fact now deemed irrelevant” in light of the abandonment of the impact rule (Toms v McConnell, 45 Mich App 647, 653); “imposing] unjust limitations on recovery” (Corso v Merrill, 119 NH 647, 658); an “arbitrary formality” (Portee v Jaffee, 84 NJ 88, 96); “unduly restrictive” (Paugh v Hanks, 6 Ohio St 3d 72); “ignoring] that the emotional impact was most probably influenced by the event witnessed — serious injury to or death of the child — rather than the plaintiff’s awareness of personal exposure to danger” (Sinn v Burd, 486 Pa 146, 157-158); and “denying] psychological reality” (D’Ambra v United States, 114 RI 643, 657).