Cheryl L. MORTISE, Plaintiff,

v.

UNITED STATES of America, Defendant.

Bernard J. MORTISE, Plaintiff,

v.

UNITED STATES of America, Defendant.

Nos. 93–CV–1603, 93–CV–1604.

United States District Court,
N.D. New York.

Dec. 26, 1995.

Paul L. Pileckas, Rome, New York, for Plaintiffs.

Thomas J. Maroney, United States Attorney, Northern District of New York, Syracuse, New York (William F. Larkin, Assistant U.S. Attorney, of counsel), for the U.S.

### *MEMORANDUM–DECISION and ORDER*

HURD, United States Magistrate Judge.

## I. *INTRODUCTION.*

The defendant in the above companion actions has moved for summary judgment pursuant to Fed.R.Civ.P. 56, dismissing the complaints. Oral argument was heard on November 9, 1995, in Utica, New York. Decision was reserved.

The following constitutes this court's disposition of these motions. Facts are read in the light most favorable to the nonmovant for the purposes of this motion. *Project Release v. Prevost,* 722 F.2d 960, 968 (2d Cir.1983).

### *FACTS*

On Saturday night, March 2, 1991, between 6:30 p.m. and 8:00 p.m., plaintiffs Cheryl L. and Bernard J. Mortise, together with two friends, Scott and Maureen Wagner, were driving separate all terrain vehicles ("ATVs") on a logging road in the town of New London off of N.Y.S. Route 49, southwest of the city of Rome, New York. They had been in-

formed that the land was not posted and could be used for such purposes. The four traveled approximately halfway up the trail during the course of the evening, and then turned and began traveling single file toward the entrance to the property.

Coincidentally, the Headquarters Company, Third Battalion, 108 Infantry Regiment of the Army National Guard had received permission from the County of Oneida—owners of the portion of property adjacent to Route 49 in the town of New London—to conduct military exercises on the evening of March 2, 1991. The military exercises involved occupying a wooded area adjacent to an old logging road, setting up mortar positions, and then moving out to occupy a firing position. Trip flares were set and personnel were issued M–16 rifles and .9 millimeter pistols.

Lieutenant Thomas Hanley, the mortar platoon leader, observed the four ATVs traveling up the logging road while it was still light out, and he assumed others in the platoon also saw them. It was approximately 9:30 or 9:45 p.m. when the ATVs were spotted returning down the trail.

As they passed the platoon encampment, Bernard Mortise's ATV triggered a trip flare that had been set up across the trail after the ATVs had initially passed. Debris was thrown all over. As the dust settled, five persons jumped from the cover of the woods with guns raised, screaming and hollering. Triggers of the guns were heard clicking, and one of the five fired a blank. Bernard Mortise, who was driving the first of the four ATVs, received the most direct interaction. He was told to shut up and that he was their prisoner. The guns were aimed at him and the debris of the flare fell around him. His wife, Cheryl Mortise, stopped her ATV back from the activity, screaming.

Lt. Hanley arrived at the location of the incident and began to take stock in the events that had just occurred. He informed the four ATV drivers that the five persons were members of a National Guard platoon, and explained that they were conducting military exercises. He said that it was a mistake; and that the platoon believed the ATVs could have been sent as decoys by their opposition in the exercise. After a period of time, plaintiffs and their two friends were allowed to drive away from the scene.

Neither plaintiff received any physical injuries. The claims against the defendant are for the intentional and/or negligent infliction of emotional distress allegedly caused by the National Guardsmen.

## II. DISCUSSION.

### A. Intentional infliction of emotional distress.

Section 2680(h) of the Federal Tort Claims Act, 28 U.S.C. § 2671, *et seq.*, creates an exception to the waiver of sovereign immunity that had been executed by the Act, for any causes of action that arise out of an assault or battery, among other torts.

The proviso at the end of this section leaves the waiver applicable to any assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution committed by an investigative or law enforcement officer. 28 U.S.C. § 2680(h). However, the proviso will not protect plaintiffs in this instance, since no argument has been given that the National Guard members fall within the definition of "investigative or law enforcement officer."

The simple question is whether the underlying actions of the National Guard members constituted an assault or battery, thus preventing the Federal Tort Claim Act's waiver of sovereign immunity from taking hold.

■ The lack of contact at this incident necessarily precludes battery. *Rubenstein v. Benedictine Hosp.*, 790 F.Supp. 396, 411 (N.D.N.Y.1992) (citing *Laurie Marie M. v. Jeffrey T.M.*, 159 A.D.2d 52, 55, 559 N.Y.S.2d 336, 338 (2d Dep't 1990), *aff'd*, 77 N.Y.2d 981, 571 N.Y.S.2d 907, 575 N.E.2d 393 (1991)). Rather, defendant argues that as a matter of law, an assault has occurred. "An 'assault' is an intentional placing of another person in fear of imminent harmful or offensive contact." *United Nat'l Ins. Co. v. Waterfront New York Realty Corp.*, 994 F.2d 105, 108 (2d Cir.1993). Defendant points out that the National Guard members were dressed in camouflage with face shields, they held their

weapons raised in a firing position aimed at Bernard Mortise a foot from his face, and began pulling their triggers as if to fire. There was an obvious apprehension on the part of plaintiffs, and the acts that occurred normally connote the existence of an assault, such as the pointing of a gun or the jumping out at someone.

Intentional infliction of emotional distress requires "(1) an extreme and outrageous act by the defendant, (2) an intent to cause severe emotional distress, (3) resulting severe emotional distress, (4) caused by the defendant's conduct." *Burba v. Rochester Gas and Elec. Corp.*, 90 A.D.2d 984, 984, 456 N.Y.S.2d 578 (4th Dep't 1982). While the claims of assault and intentional infliction of emotional distress are separate and distinct, in the factual scenario present herein, one encompasses the other.[1]

Even the plaintiffs argue that "[w]hat makes the conduct of the National Guard so extreme and outrageous is that they knew or should have known that persons on ATV vehicles with their headlights on could not have been the 'enemy.'" (Pl.'s Mem.Law at 10.) For the purposes of this motion, this allegation is accepted as true. However, such knowledge would satisfy the intent necessary to prove assault.

Assuming the facts regarding the intent of the National Guardsmen are true as alleged by the plaintiff, the claims of intentional infliction of emotional distress and assault are one and the same. *See Lambertson v. United States*, 528 F.2d 441, 443 (2d Cir.) ("[A] court must look, not to the theory upon which the plaintiff elects to proceed, but rather the substance of the claim which he asserts."), *cert. denied*, 426 U.S. 921, 96 S.Ct. 2627, 49 L.Ed.2d 374 (1976). The defendant has not waived sovereign immunity to this underlying assault claim, and thus, this court has no jurisdiction. *Id.* As a result, these claims must be dismissed in both cases.

In addition, the facts themselves do not support a claim of intentional infliction of emotional distress upon Cheryl Mortise.

She was removed from the contact and conversation sparking this action. She was driving her ATV well behind Bernard Mortise when his vehicle tripped one of the flares. She was at a distance when the National Guardsmen came out of the woods and approached Bernard Mortise. The focus of their actions was directed at Bernard Mortise. There was no intent, whether to assault or to cause emotional distress, directed at Cheryl Mortise. As a result plaintiff Cheryl Mortise's claim of intentional infliction of emotional distress must also be dismissed for those reasons.

**B.** *Negligent infliction of emotional distress.*

Remaining are plaintiffs' claims of negligent infliction of emotional distress. The defendant has waived sovereign immunity for claims sounding in negligence. *See* 28 U.S.C. §§ 2671 *et seq.; Ricca v. United States*, 488 F.Supp. 1317, 1325 (E.D.N.Y. 1980). In applying New York law, such claims arise "only in unique circumstances." *Gluckman v. American Airlines, Inc.*, 844 F.Supp. 151, 157 (S.D.N.Y.1994) (citations omitted). When there is no physical injury to a plaintiff, the New York Court of Appeals has "revealed three distinct lines of cases." *Kennedy v. McKesson Co.*, 58 N.Y.2d 500, 504, 462 N.Y.S.2d 421, 448 N.E.2d 1332 (1983).

One category involves a scenario where defendant breaches a duty owed to plaintiff which causes plaintiff to directly suffer emotional harm. In limited instances, New York law allows for recovery of emotional damages caused by negligence where a specific duty owed to the plaintiff is breached, thus resulting in emotional injury from defendant unreasonably jeopardizing the surety of plaintiff's physical well being. *Id.* (citing *Ferrara v. Galluchio*, 5 N.Y.2d 16, 176 N.Y.S.2d 996, 152 N.E.2d 249 (1958); *Battalla v. State*, 10 N.Y.2d 237, 219 N.Y.S.2d 34, 176 N.E.2d 729 (1961)). Plaintiff may recover damages for the emotional harm directly

---

1. While one could intentionally inflict emotional distress without the existence of an assault, for example, by writing a threatening letter; here,

the facts cannot support a separation of the two claims.

caused by such a breach despite the absence of physical injury. *Kennedy,* 58 N.Y.2d at 504–05, 462 N.Y.S.2d 421, 448 N.E.2d 1332 (citing *Battalla,* 10 N.Y.2d 237, 219 N.Y.S.2d 34, 176 N.E.2d 729); *Johnson v. State,* 37 N.Y.2d 378, 372 N.Y.S.2d 638, 334 N.E.2d 590 (1975); *Lando v. State,* 39 N.Y.2d 803, 385 N.Y.S.2d 759, 351 N.E.2d 426 (1976)).

■ A second category involves situations relating to the "zone of danger rule." The zone of danger denotes an area in close proximity to the point where the tortious activity occurred. The rule is triggered when plaintiff witnesses, from within the boundaries of this "zone," the commission of a tort against a third party. New York law allows for recovery of emotional damages caused by negligence where the plaintiff was threatened with bodily harm as a result of the defendant's negligence, and suffered "serious and verifiable" emotional injury from "the observation of the serious injury or death of a member of his or her immediate family," *Bovsun v. Sanperi,* 61 N.Y.2d 219, 232–32, 473 N.Y.S.2d 357, 461 N.E.2d 843 (1984).[2]

■ A third classification encompasses those instances when defendant breaches a duty owed to plaintiff resulting in physical injury to a third party, but only emotional and/or pecuniary harm to plaintiff. *Becker v. Schwartz,* 46 N.Y.2d 401, 413 N.Y.S.2d 895, 386 N.E.2d 807 (1978); *Howard v. Lecher,* 42 N.Y.2d 109, 111, 397 N.Y.S.2d 363, 366 N.E.2d 64 (1977).[3] Under such circumstances, plaintiff may recover only when the emotional harm suffered results directly, rather than consequentially, from defendant's breach. *Kennedy,* 58 N.Y.2d at 506, 462 N.Y.S.2d 421, 448 N.E.2d 1332. Thus, if the harm inflicted is a consequential (rather than direct) result of the breach, plaintiff may not recover for such damages. *Id.*

■ The facts as presented by either plaintiff herein, do not support a cognizable claim under any of the above three approaches for negligent infliction of emotional distress.

In the first category, even though plaintiffs were both placed in fear of their physical safety, there was no specific duty owed to either plaintiff by the defendant. The parties had no special relationship. The National Guardsmen only owed a general duty to exercise care toward all motorists or pedestrians in the area including the plaintiffs and their friends. Without physical contact or injury, a general duty of care is insufficient to support a claim for emotional injuries only. *In re Air Crash Disaster at Cove Neck, Long Island,* 885 F.Supp. 434, 439 (E.D.N.Y.1995); *Lancellotti v. Howard,* 155 A.D.2d 588, 589–590, 547 N.Y.S.2d 654 (2d Dep't 1989); *Battalla,* 10 N.Y.2d at 239–42, 219 N.Y.S.2d 34, 176 N.E.2d 729; *Thomas v. Supermarkets General Corp.,* 154 Misc.2d 828, 831, 586 N.Y.S.2d 454 (Sup.Ct.1992). Examples of direct special or unique duties owed to a plaintiff are found in *Perrin v. Hilton Int'l, Inc.,* 797 F.Supp. 296, 300 (S.D.N.Y.1992) (specific duty to hotel guest to exercise reasonable care in conveying accurate information to husband concerning his wife's whereabouts); and *Martinez v. Long Island Jewish Hillside*

---

2. Cheryl Mortise cannot succeed based upon the *Bovsun* theory. This "zone of danger" theory requires danger to her and the witnessing of serious physical injury of a family member—in this instance, her husband. However, her husband was never physically harmed or touched in any manner by the Guardsmen.

3. Each of these cases involves a lawsuit against an obstetrician brought by parents of children born with a congenital disease. The defendants were not responsible for the children's condition, except to the extent that the parents would not have given birth of the child but for defendant's negligence. *See Becker,* 46 N.Y.2d at 410–11, 413 N.Y.S.2d 895, 386 N.E.2d 807; *Howard,* 42 N.Y.2d at 111, 397 N.Y.S.2d 363, 366 N.E.2d 64. In *Howard,* parents of a child with Tay–Sachs disease sued for emotional injuries which they suffered from watching their child slowly die. 42 N.Y.2d at 111, 397 N.Y.S.2d 363, 366 N.E.2d 64. Similarly, in *Becker,* the parents of a child with Down's Syndrome sued for emotional injuries. 46 N.Y.2d at 406, 413 N.Y.S.2d 895, 386 N.E.2d 807. In both cases, relief for emotional damages was denied despite a direct duty owed by the defendant doctor to the parents. While pecuniary damages were found to directly flow from the breach of the duty owed to the parents, the emotional damages were denied because they were consequential to the breach of a duty owed to the child. *Becker,* 46 N.Y.2d at 415, 413 N.Y.S.2d 895, 386 N.E.2d 807; *see also Howard,* 42 N.Y.2d at 112, 397 N.Y.S.2d 363, 366 N.E.2d 64 (no cause of action exists permitting recovery solely for "the anguish of observing their child suffer.").

*Medical Center,* 70 N.Y.2d 697, 699, 518 N.Y.S.2d 955, 956, 512 N.E.2d 538 (1987) (breach of duty owed directly to plaintiff in rendering erroneous advice about abortion options). The other two categories involve direct emotional distress as the result of a physical injury, damage, or condition to third parties, a fact not present in these cases.

■ "Although plainly an unfortunate and unpleasant experience, simply stated, the law does not provide a remedy for every wrong." *Thomas,* 154 Misc.2d at 833, 586 N.Y.S.2d 454.

Accordingly, it is

ORDERED, that:

1. Defendant's motion for summary judgment is **GRANTED,** and the action of plaintiff Cheryl Mortise is dismissed without costs; and

2. Defendant's motion for summary judgment is **GRANTED,** and the action of plaintiff Bernard Mortise is dismissed without costs.

The Clerk is directed to enter judgment accordingly.

IT IS SO ORDERED.