OPINION OF THE COURT
Karen S. Smith, J.
This motion by defendant New York Crane & Equipment Corporation (hereafter NY Crane) for an order pursuant to CPLR 3211 (a) (7) dismissing those portions of plaintiffs’ complaint relating to emotional injuries and nuisance is granted in part and denied in part, as discussed more fully below. As the cross motions by defendants Reliance Construction Ltd., doing business as RCG Group, sued herein as Reliance Construction Group and RCG Group, Inc. (hereafter Reliance), and East 51st Street Development Company, LLC (hereafter East 51st) seek the same relief on the same grounds as NY Crane’s motion, they are also granted in part and denied in part, as provided more fully below.
This action arises from an accident that occurred on March 15, 2008, when a crane involved in construction at 303 East 51st Street, New York, New York, collapsed, portions of which came into contact with nearby buildings. The plaintiffs were each tenants of the building located at 300 East 51st Street, New York, New York,[1] which suffered structural damage as a result of the crane collapse.
NY Crane, who leased the subject crane to Joy Contractors, Inc., now moves, pre-answer, to dismiss those portions of plaintiffs’ complaint which purport to state a cause of action for emotional injuries and for nuisance, pursuant to CPLR 3211 (a) (7), for failure to state a cause of action. NY Crane contends that plaintiffs cannot recover for their alleged “severe emotional distress” because (1) while there is a bare allegation that *860 plaintiffs were in the “zone of danger,” none of the plaintiffs observed a family member’s death or serious injury, and (2) negligent destruction of property cannot support a claim for emotional injuries, and plaintiffs have failed to allege any physical injuries. NY Crane also argues that plaintiffs cannot recover for emotional injuries, in part, because any such injuries are alleged to be consequential in nature. In addition, NY Crane argues that plaintiffs have not sufficiently pleaded a cause of action for nuisance, where they have merely listed it as a form of damage suffered.
Reliance cross-moves, also seeking an order dismissing those portions of plaintiffs’ complaint which purport to state a cause of action for emotional injuries and for nuisance, pursuant to CPLR 3211 (a) (7). According to Reliance, plaintiffs have failed to make any allegation that Reliance’s actions specifically endangered them physically or caused them to fear for their own safety. Nor have plaintiffs, according to Reliance, alleged any intentional conduct upon which a claim for intentional infliction of emotional distress could lie. While plaintiff Hayes asserts in the complaint that she was within the “zone of danger,” as NY Crane points out, there are no allegations that she witnessed the death or serious injury of a family member, thereby precluding recovery under a “zone of danger” theory. Also like NY Crane, Reliance contends that none of the plaintiffs can recover emotional injury damages based on property damage alone, and none state a cause of action for nuisance.
East 51st also cross-moves for an order dismissing those portions of plaintiffs’ complaint which purport to state a cause of action for emotional injuries and for nuisance, pursuant to CPLR 3211 (a) (7). East 51st adopts the arguments set forth by NY Crane and Reliance and argues that in order to recover, each plaintiff must allege that she was on the premises at the time of the crane collapse and either (1) suffered a consequential physical manifestation of emotional distress as a result, or (2) witnessed the death or serious injury of a family member. Plaintiffs here, according to East 51st, have not so alleged.
Plaintiffs oppose the motion and two cross motions. As an initial matter, plaintiffs clarify that the use of the word “nuisance” in the complaint was not intended to state a cause of action, but rather was included merely as a descriptive word to amplify the experience of plaintiffs after the collapse occurred. As plaintiffs have not pleaded a cause of action for nuisance, and there is no separate set of damages described as *861 “nuisance” nor any other legally operative purpose for the language to be included in the complaint, it must be stricken from the complaint.
As to the remainder of defendants’ arguments, plaintiffs argue they have sufficiently pleaded compensable noneconomic damages. In opposition to the motion and cross motions, plaintiffs also submit an affidavit by Kathleen Tompkins, and the testimony of Margery Jane Bonia taken by defendant City of New York pursuant to General Municipal Law § 50-h for the court’s consideration. Plaintiffs contend that they need not allege physical injury or physical manifestation of their emotional injuries in order to properly plead a cause of action; nor, they argue, must they allege that plaintiffs witnessed the death or serious physical injury of a family member, as defendants contend. Rather, according to plaintiffs, they may recover for severe emotional injuries that flow from defendants’ breach, including but not limited to fear, panic and other attendant emotional injury caused by being on the premises (or in the “zone of danger”) at the time of the collapse, and also for emotional distress directly caused by the aftermath of the crane collapse.
In deciding a motion brought pursuant to CPLR 3211 (a) (7) for failure to state a cause of action, the complaint should be liberally construed and the facts alleged in the complaint and any submissions in opposition to the dismissal motion accepted as true, according plaintiffs the benefit of every possible favorable inference. (511 W. 232nd Owners Corp. v Jennifer Realty Co., 98 NY2d 144, 152 [2002].) “The motion must be denied if from the pleadings’ four corners ‘factual allegations are discerned which taken together manifest any cause of action cognizable at law.’ ” (Id.) Affidavits submitted in support of a motion to dismiss are considered “only for the limited purpose of determining whether the plaintiff has stated a claim, not whether he has one and, in the absence of proof that an alleged material fact is untrue or beyond significant dispute,” the court must not grant the motion. (Wall St. Assoc. v Brodsky, 257 AD2d 526, 526-527 [1st Dept 1999].)
It is well established that one who sustains physical injuries as a result of a tortfeasor’s negligence may recover for attendant pain and suffering, both physical and mental. Actions predicated on emotional injuries alone were long treated with suspicion in this state, and no cause of action for “negligent infliction of emotional distress” would lie. However, more than *862 50 years ago, in affirming a jury’s award for defendant doctors’ negligence leading to “cancerphobia,” the Court of Appeals reversed this trend, declaring, “Freedom from mental disturbance is now a protected interest in this State.” (Ferrara v Galluchio, 5 NY2d 16, 21 [1958].) The Court examined the history of the State’s suspicion of claims for emotional distress and determined that “[t]he problem is one of adequate proof, and it is not necessary to deny a remedy in all cases because some claims may be false.” (Id.)
Three years later, in Battalla v State of New York (10 NY2d 237 [1961]), the Court of Appeals applied the principles in Ferrara where an infant plaintiff at a mountain ski center was placed into a chair lift by a state employee, who negligently failed to secure and properly lock the belt on the chair lift. The infant plaintiff became frightened and hysterical upon descent, “with consequential injuries.” (Id. at 239.)[2] The Appellate Division, Third Department (11 AD2d 613 [1960]), dismissed the case on the basis of Mitchell v Rochester Ry. Co. (151 NY 107 [1896]), which held that there could be no recovery for injuries caused by “fright negligently induced,” whether such injuries are physical or emotional (10 NY2d at 239). The Battalia Court overturned Mitchell, stating that “ ‘[t]he best statement of the rule is that a wrong-doer is responsible for the natural and proximate consequences of his misconduct; and what are such consequences must generally be left for the determination of the jury.’ ” (10 NY2d at 240.)
The Court further reaffirmed the viability of claims for emotional injuries in Johnson v State of New York (37 NY2d 378 [1975]). There, plaintiff was falsely advised by a state hospital that her mother had died. After plaintiff and her aunt saw the corpse at the funeral, they determined it was not plaintiff’s mother. Plaintiff subsequently brought suit seeking, inter alia, to recover for emotional distress. The Court found that liability hinged on the hospital’s duty to properly advise the next of kin when a patient dies. “In the light of the Battalia and Ferrara cases . . . and the reasoning upon which they were based,” the Court wrote, “recovery for emotional harm to one subjected directly to the tortious act may not be disallowed so long as the evidence is sufficient to show causation and substantiality of the harm suffered, together with a ‘guarantee of genuineness’ *863 to which the court referred in the Ferrara case.” (37 NY2d at 383-384.)
In 1983, the Court of Appeals recognized that three distinct lines of cases regarding recovery of damages for emotional distress had developed. (Kennedy v McKesson Co., 58 NY2d 500 [1983].) First, the Court stated, “when there is a duty owed by defendant to plaintiff, breach of that duty resulting directly in emotional harm is compensable even though no physical injury occurred.” (Id. at 504, citing Ferrara v Galluchio, 5 NY2d 16 [1958] [physical injury alleged]; Battalla v State of New York, 10 NY2d 237 [1961] [no physical injury]; Johnson v State of New York, 37 NY2d 378 [1975] [no physical injury]; Lando v State of New York, 39 NY2d 803 [1976] [no physical injury].)
The second line was exemplified by Tobin v Grossman (24 NY2d 609 [1969]), in which the Court of Appeals denied recovery to a plaintiff mother who sought to recover for emotional distress after her two-year-old child was injured by a motor vehicle, but where the child’s mother did not witness the accident and was not directly exposed to the vehicle driver’s alleged negligence. (See also Vaccaro v Squibb Corp., 52 NY2d 809 [1980] [dismissing complaint of mother who ingested a drug causing her child to be born with defects, but in which no injury to the mother was alleged].)
The third line of cases involved circumstances in which the defendant(s) violated a duty owed to plaintiff, but caused physical injury only to a third person and only economic or emotional harm to plaintiff. In Kennedy v McKesson Co., plaintiff was a dental surgeon who submitted his oxygen and nitrous oxide dispensing machine for repair by defendants. (58 NY2d 500 [1983].) After the machine was returned to plaintiff, he used it to administer oxygen to a patient, but because the defendants had negligently reversed the labels on the machine, the patient received 100% nitrous oxide, killing her. The Kennedy Court held that plaintiff dental surgeon could not recover for his mental distress at having been involved in the death of his patient, even though the duty breached was a duty owed to him. (58 NY2d 500 [1983]; see also Howard v Lecher, 42 NY2d 109 [1977] [court denied recovery for emotional distress where plaintiff parents alleged doctors should have known to test or evaluate them for likelihood of having a child with Tay-Sachs disease, and child subsequently born with the illness].)
“The rule to be distilled from those cases is that there is no duty to protect from emotional injury a *864 bystander to whom there is otherwise owed no duty, and, even as to a participant to whom a duty is owed, such injury is compensable only when a direct, rather than consequential, result of the breach.” (Kennedy v McKesson Co., 58 NY2d at 506.)
An exception to this general rule prohibiting “bystander claims” for emotional distress was examined in detail in Bovsun v Sanperi (61 NY2d 219 [1984]) and is commonly referred to as a “zone of danger” claim. In order to recover under a “zone of danger” theory, “a plaintiff must establish that he suffered serious emotional distress that was proximately caused by the observation of a family member’s death or serious injury while in the zone of danger.” (Stamm v PHH Veh. Mgt. Servs., LLC, 32 AD3d 784, 786 [1st Dept 2006] [emphasis added], citing Bovsun v Sanperi, supra.) None of the plaintiffs here have alleged that she witnessed the death or serious injury of any person, let alone a family member, such that would raise the specter of recovery under Bovsun, plaintiffs’ invocation of the legally operative term “zone of danger” in the complaint notwithstanding. As such, the court need not further address defendants’ arguments that plaintiffs have failed to state a cause of action for such recovery, where none was alleged.
Additionally, “there may be recovery for the emotional harm, even in the absence of fear of potential physical injury, to one subjected directly to the negligence of another as long as the psychic injury was genuine, substantial, and proximately caused by the defendant’s conduct.” (Howard v Lecher, 42 NY2d 109, 111-112 [1977] [emphasis added].) With that said, as defendants correctly point out, plaintiffs may not recover for emotional distress caused by damage to property alone. (See e.g. Stanley v Smith, 183 AD2d 675 [1st Dept 1992]; Fowler v Town of Ticonderoga, 131 AD2d 919 [3d Dept 1987].)
While defendants, and to a certain degree also plaintiffs, make broad arguments regarding the sufficiency of the claims of “plaintiffs,” each plaintiff stands in a different position and her claims must be evaluated individually to determine whether she has stated a cause of action permitting her to recover for alleged emotional injuries.
Jennifer Battistello
In the complaint, plaintiff Battistello alleges, in relevant part: (1) defendants were “reckless, careless and negligent” (complaint ¶¶ 57, 62); (2) that such negligence caused her to sustain “damages to property; her entire apartment has been *865 destroyed; she has been displaced from her home; nuisance; sustained severe emotional distress; fear of dying” (complaint ¶ 58); and (3) that she suffered unspecified “personal injuries” (complaint ¶¶ 56, 63).[3]
Based on the complaint, Battistello’s claims for emotional distress must be dismissed. There is no allegation that she was on the premises at the time of the accident, nor is there any other allegation that would give rise to emotional injury damages based on anything other than the destruction of her personal property. Battistello’s claim that she was “displaced from her home” is merely a consequence of her property damage and cannot sustain a claim for “severe emotional distress.” Eileen Hayes
Plaintiffs’ complaint, as it pertains to Eileen Hayes, states in relevant part: (1) defendants were “reckless, careless and negligent” (complaint ¶¶ 72, 78); (2) that she “was in the zone of danger at the time of the occurrence” (complaint ¶¶ 73, 79); (3) that defendants’ negligence caused her to sustain “damages to property; her entire apartment has been destroyed; she has been displaced from her home; nuisance; sustained severe emotional distress; fear of dying” (complaint ¶ 74); and (4) that she suffered unspecified “personal injuries” (complaint ¶¶ 56, 80).
Aside from the allegation that plaintiff Hayes was “in the zone of danger at the time of the occurrence,” there is no evidence she was on the premises. There is no affidavit or testimony submitted on behalf of Hayes providing additional information. Without more information about what plaintiff means by “zone of danger,” which is not a factual allegation as much as a legally operative claim, this allegation is insufficient to sustain a claim for severe emotional distress and must be dismissed.
Margery Jane Bonia
As with plaintiffs Battistello and Hayes, as to Bonia the complaint alleges, in relevant part: (1) defendants were “reck *866 less, careless and negligent” (complaint ¶¶ 89, 94); (2) that such negligence caused her to sustain “damages to property; her entire apartment has been destroyed; she has been displaced from her home; nuisance; sustained severe emotional distress; fear of dying” (complaint ¶ 90); and (3) that she suffered unspecified “personal injuries” (complaint ¶ 56).
Unlike plaintiff Hayes, there is no allegation in the complaint that plaintiff Bonia was in the “zone of danger.” However, in her General Municipal Law § 50-h testimony, Bonia testified that she was at home in her apartment when the crane collapsed and came into contact with her apartment. While she was still in the apartment, Bonia testified that she heard a “[l]oud noise, then it got louder and louder and louder. It rumbled and roared and rumbled.” She also stated that her terrace was struck while she was in the apartment, describing it as “absolutely smashed,” and inside the apartment cracks developed, floor tiles “went up to the ceiling, just jumped up,” she thought she saw water rushing into the apartment, and windows broke. After observing this, Bonia testified that she left the apartment in fear, running down the 18 flights of stairs to get out of the building. Based on this testimony, plaintiff Bonia has sufficiently pleaded a claim for emotional injuries and that portion of her complaint will not be dismissed.
Kathleen Tompkins, Individually
As to plaintiff Tompkins, the complaint alleges, in relevant part: (1) defendants were “reckless, careless and negligent” (complaint ¶¶ 104, 109); (2) that such negligence caused her to sustain
“damages to property; her entire apartment has been destroyed; she has been displaced from her home; nuisance; sustained severe emotional distress; fear of dying; and sustained out-of-pocket expenses to the extent not paid or reimbursed by homeowners insurance, including but not limited to damaged pieces of art, rented medical equipment, cancelled trip expenses; exacerbation and aggravation of plaintiff Lacey Tompkins’ spina muscular atrophy condition” (complaint ¶ 105); and (3) that she suffered unspecified “personal injuries” (complaint ¶ 56).
Plaintiffs submit an affidavit by Kathleen Tompkins, which goes into great detail regarding how her life and the lives of her daughters have been affected by the subject accident. As it il *867 himinates the claims being alleged on behalf of Tompkins, she states that she “witnessed the horrific accident on March 15th” and had just returned from walking their service dog when it occurred. In addition, Kathleen ties her own claims closely to the claims of her daughter, Lacey. Lacey, who is now 16 years old, “suffers from a degenerative neuromuscular disease called Spinal Muscular Atrophy” which has required numerous advanced medical devices to be installed in their apartment to maintain Lacey’s health, allow her to use the bathroom, assist in her mobility, help her breathe while she sleeps, and more. The crane collapse displaced the whole family and destroyed necessary medical equipment, placing Lacey in a very precarious situation; for the same reasons, and as primary caretaker responsible for ensuring Lacey’s health and safety, Kathleen alleges she is entitled to recover for her emotional distress.
The factual allegations of Kathleen Tompkins present a more difficult analysis, as she attempts to bootstrap her claims on the claims of her daughter Lacey. Any emotional recovery of Kathleen must be based on injuries directly caused by defendants’ alleged negligence. Kathleen states in her affidavit that she had just returned from walking the dog and “witnessed” the collapse of the crane. This is sufficient, considering the reality of what the premises must have been like at the time of the crane collapse, to sustain her cause of action for purposes of a CPLR 3211 (a) (7) motion, where the evidence is construed in the light most favorable to the nonmoving party, but only for emotional injuries related to being on the premises or at the site when the accident occurred. The case law is clear that Kathleen cannot recover emotional injury damages for distress caused by seeing her daughter(s) in emotional distress. (See Tobin v Grossman, 24 NY2d 609 [1969].) For that reason, to the extent Kathleen Tompkins asserts claims stemming from the injuries allegedly caused to Lacey or Sabrina Tompkins, and not directly suffered by Kathleen herself, those claims are dismissed.
Lacey Tompkins, Minor Child, by her Mother and Natural Guardian, Kathleen Tompkins
The allegations contained in the complaint regarding Lacey Tompkins are identical to those alleged for Kathleen Tompkins. However, Kathleen’s affidavit provides additional information relevant to Lacey’s potential claims. According to Kathleen Tompkins’ affidavit, as discussed above, Lacey’s preexisting medical condition was exacerbated and aggravated in the following ways: (1) she was separated from many of the medical *868 devices on which relied; (2) sleeping on a traditional hospital bed caused her a painful pressure sore that required intense care at a specialty clinic and plastic surgery; (3) her complete physical dependence on others, combined with instability created by the accident, has caused Lacey anxiety and fear of being alone; and (4) her “Canine Companion for Independence (Service Dog)” was left in the building the first day of the collapse and has since died.
This court is not prepared to dismiss any of the claims alleged by Lacey Tompkins. Although she was not on the premises at the time of the crane collapse, the collapse is alleged to have directly harmed her both physically and emotionally, principally by separating her from lifesaving and medically necessary equipment. That this plaintiffs injuries may be more severe than those of others is not determinative in this regard, where the alleged injuries are claimed to be a direct result of defendants’ negligence.
Sabrina Tompkins, Minor Child, by her Mother and Natural Guardian, Kathleen Tompkins
The allegations contained in the complaint regarding Sabrina Tompkins are identical to those alleged for Kathleen Tompkins, and Kathleen Tompkins’ affidavit does not amplify the pleadings in any way pertaining to Sabrina. There are no claims specific to Sabrina, and plaintiffs submit no evidence to amplify the complaint as to this plaintiff. As such, there is no basis for recovery for emotional distress by Sabrina Tompkins and her claims for the same must be dismissed.
Accordingly, it is ordered that the motion and cross motions are granted in part, to the limited extent of dismissing the claims by plaintiffs Jennifer Battistello, Eileen Hayes and Sabrina Tompkins for emotional injuries only; it is further ordered that the motion and cross motions are granted in part, to the limited extent of dismissing the claims of plaintiff Kathleen Tompkins for emotional injuries which are derived from the injuries alleged by plaintiff Lacey Tompkins only, but not as to her direct claims; it is further ordered that those portions of the complaint seeking damages for “nuisance” are hereby stricken; it is further ordered that the motion and cross motions are denied in all other respects.

. Plaintiffs Jennifer Battistello and Eileen Hayes both resided in apartment 19A; Margery Jane Bonia resided in apartment 18A; and Kathleen Tompkins resided in apartment 5A with her two minor daughters, Lacey and Sabrina Tompkins.

. The Court of Appeals did not elaborate on what these “consequential injuries” were, and the court does not rely on the existence of such consequential injuries as a basis for its holding.

. Paragraph 56 alleges, generically, that “plaintiffs were caused to suffer property damage and/or personal injuries and other damages.” Paragraph 63 states that Battistello specifically was “caused to suffer damages, both property damage, and personal injuries, as set forth above,” but there are no specific personal injuries set forth as they relate to Battistello. Additionally, while paragraph 63 is specifically directed to defendant City of New York, the court will consider the complaint as a whole for purposes of this motion to dismiss.